UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM CODY,<br><br>Plaintiff,<br><br>vs.<br><br>RN HEATHER BOWERS; LINDA MILLER-HUNOFF; RN JESSICA SCHREURS; KRISTINE WIERSMA; RN KAYLA TINKER; DR. MARY CARPENTER; STEVE BAKER; ARTHUR ALLCOCK; JENNIFER DRIESKE; DARIN YOUNG; DENNIS KAEMINGK; DR. KENDRA[1] OTT; RD JESSICA BECKER; MERLIN SEJNOHA JR.; TROY PONTO; DERRICK BIEBER; ELIZABETH EFFLING; CO GAIKOWSKI; BRENT MCDONALD, ALL PRECEEDING DEFENDANTS IN THEIR OFFICIAL OR INDIVIDUAL CAPACITIES; AND CBM MANAGED SERVICES,<br><br>Defendants. | 4:19-CV-04026-RAL<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION WITH ONE MODIFICATION** |

**I.     INTRODUCTION**

William Cody ("Cody"), an inmate at the South Dakota State Penitentiary ("SDSP"), filed an amended pro se complaint against the above captioned SDSP officials (collectively "Defendants"), alleging that Defendants deprived him of adequate medical care, denied him access to medical records by seizing his mail from outside medical providers, subjected him to retaliatory

---

[1] The heading for the Report and Recommendation and Cody's Amended Verified Complaint list this individual's name as "Dr. Kenra Ott," but both later refer to this person as "Dr. Kendra Ott."

1

treatment, and deprived him of access to the courts. Doc. 9. The case was referred to Magistrate Judge Veronica Duffy for screening under 42 U.S.C. § 1915, and she issued a Report and Recommendation on June 28, 2019. Doc. 12. Judge Duffy recommended that all of Cody's equal protection and due process claims be dismissed; that Cody's Eighth Amendment claims relating to his eyecare, diet, and the requirement that he purchase over-the-counter treatments from commissary be dismissed; that Cody's access to the courts claim alleging inadequate medical references in the prison library be dismissed; and that defendants Dr. Kendra Ott, Jessica Becker, Merlin Sejnoha Jr., CBM Managed Services, Dr. Mary Carpenter, Darin Young, and Dennis Kaemingk be dismissed. Doc. 12 at 35. Judge Duffy further recommended that the claims surviving screening should be Cody's First Amendment interference with mail claims, his Eighth Amendment claim relating to hearing impairment, and his access to the courts claims based on alleged retaliation. Doc. 12 at 35.

Cody thereafter objected to some of Judge Duffy's recommendations. Doc. 14. Cody objected to Judge Duffy's recommendation to dismiss his equal protection claims, Doc. 14 at 1-2; to dismiss parts of the interference with mail claims, Doc. 14 at 3-5; and to dismiss defendants Carpenter, Young and Kaemingk, Doc. 14 at 7.

This Court reviews objections to a report and recommendations de novo. 28 U.S.C. § 636(b)(1). "In the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" Anderson v. Evangelical Lutheran Good Samaritan Soc'y, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). This Court has conducted a de novo review of the record and adopts the Report and Recommendation with one modification.

II. **DISCUSSION**

## A. Equal Protection Claims

In Cody's Amended Complaint, he alleges equal protection violations claiming that Defendants promulgated and followed a policy by which they seized prisoners' mail from outside medical providers and that they retaliated against Cody for pursuing legal claims against them. Doc. 9 at 62-64, 67-68. On these claims, Judge Duffy recommended dismissal because Cody failed to allege that he was a member of a suspect class or that Defendants treated him differently than another similarly-situated group of prisoners.

The Fourteenth Amendment's promise of equal protection of the law extends to provide some protections to prison inmates. Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004). In order to successfully plead an equal protection claim, Cody "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Id.

In the Report and Recommendation, Judge Duffy reasoned that because Cody did not allege he was treated differently than any other similarly-situated class, his equal protection claims should fail. Doc. 12 at 7. Cody objects and argues that he was treated as a "class of one" without any rational basis therefore. Doc. 14 at 2 (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). In Village of Willowbrook v. Olech, the Supreme Court of the United States established that a "class of one" can successfully raise an equal protection claim. 528 U.S. at 565. In Village of Willowbrook, a landowner sought to connect certain property to the municipal water supply, but the municipality conditioned that connection on the granting of a 33-foot easement, when it only required a 15-foot easement from other similarly-situated landowners. Id. at 563. The landowner alleged that the disparate demand was motivated by animosity resulting

3

from the landowner's unrelated lawsuit against the municipality. Id. The Supreme Court held that an individual may maintain an equal protection claim when "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564. The Supreme Court found that because the complaint alleged the municipality's demand was irrational and wholly arbitrary, the landowner successfully stated an equal protection claim. Id. at 565.

The primary premise of counts one and two in Cody's Amended Verified Complaint is that the seizure of prisoner mail is constitutionally impermissible. Doc. 9 at 62. As an initial matter, Cody cannot establish an equal protection claim as a "class of one" because he was not treated differently from other prisoners in the initial seizure of his mail from outside medical providers. In his Declaration, Cody cites an email from Miller-Hunoff stating that "[a]ll correspondence from a Doctor or a medical facility does indeed get sent to [Health Services]." Doc. 15 at 19. Therefore, the facts as alleged establish that Cody is treated the same as similarly-situated prisoners in that his mail from outside medical providers is diverted to Health Services. Furthermore, although Cody alleges that the mail policy implemented by Bowers, Miller-Hunoff, and Schreurs was irrational, Doc. 14 at 2, his pleadings acknowledge a possible rational basis for the seizure of his medical mail—the correspondence may contain information of the date and time of a future medical appointment, which could allow an inmate to plan an escape and thereby threaten prison security. Doc. 15 at 19.

Cody claims that he was treated as a "class of one" in that only he had to request to receive his mail from outside medical providers. Doc. 14 at 2. However, this allegation misses the point. After a prior lawsuit filed by Cody regarding the seizure of his medical mail, Cody and prison officials established a system by which he could request copies of his medical reports from outside

medical providers and then notify Health Services of such request. Doc. 15 at 20-21. Health Services would then read the correspondence, redact any dates relating to future medical appointments, and then deliver it to Cody. Doc. 15 at 21. This system, although alleged to only apply to Cody, cannot fairly be characterized as a regulation, but would more accurately be described as an accommodation. Cody was not subjected to an irrational and arbitrary condition that did not apply to others as the plaintiff was in Village of Willowbrook. Rather, he was subjected to the same rational regulation, but provided an alternative means to achieve his end goal—the receipt of his medical reports upon request.

Cody further alleges that Defendant McDonald treated him differently from other prisoners by packing and inventorying the items in Cody's cell while Cody was placed in the institution's Special Housing Unit, also referred to as disciplinary segregation. Doc. 14 at 2. Cody alleges that McDonald seized a great deal of his permitted property as contraband and that he failed to provide an accurate inventory of the items. Doc. 15 at 52. Although he alleges this was an error according to policy, he failed to allege that he was treated differently from other prisoners who are temporarily sent to the Special Housing Unit, which allegation is a necessary component of an equal protection claim. Doc. 15 at ¶ 168. Because Cody failed to allege that he was irrationally and arbitrarily treated differently from other prisoners, his objections to the recommended dismissal of his equal protection claims is overruled.

### B. First Amendment Seizure of Mail Claims

Cody next objects to Judge Duffy's application of the three-year statute of limitations to his First Amendment claims and argues that the Defendants' seizure of his mail constitutes a continuing violation of his constitutional rights. Doc. 15 at 3. As Judge Duffy noted, Cody's complaint alleges seizures of his medical mail dating back several years. Doc. 12 at 9.

Cody's First Amendment claim is cognizable in this Court under 42 U.S.C. § 1983, which contains no limitation period for claims. For federal causes of action arising under federal statutes enacted before December 1, 1990, "[w]hen Congress has not established a time limitation... the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266–67 (1985). Because the cause of action Cody now asserts under § 1983 existed before December 1, 1990, the South Dakota statute of limitations for these claims applies. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004). South Dakota Codified Law 15-2-15.2 establishes in relevant part that "[a]ny action brought under the federal civil rights statutes may be commenced only within three years after the alleged constitutional deprivation has occurred." SDCL § 15-2-15.2. Therefore, Judge Duffy appropriately considered only the allegations within three years of Cody filing his complaint to determine if he successfully pled a claim. She determined that he had, and this Court agrees.

Despite Judge Duffy's recommendation that Cody's First Amendment claims within the three-year statutory period should survive screening, Cody argues that the continuing violations doctrine should allow him to maintain all of his alleged First Amendment claims. However, the reaches of that doctrine do not extend as far as he asserts. "The continuing violations doctrine is typically applied to hostile work environment and antitrust claims; however it has been applied to § 1983 for Eighth Amendment violations." Turner v. Palmer, 84 F.Supp.3d 880, 885–86 (S.D. Iowa 2015). In the context of employment discrimination, the Supreme Court held that discrete "acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). However, those prior acts may still be used as background evidence to support a timely filed claim. Id.

Cody cites Eighth Amendment and anti-trust cases in support of his contention, but he presents no authority that the continuing violations doctrine applies to First Amendment cases. See Doc. 14 at 3. Rather, each individual time his medical mail was diverted constituted a discrete act by the Defendants giving rise to a cause of action. Once the three-year statute of limitations on those discrete acts passed, Cody could no longer sue on those claims. He may however use them to establish background evidence for his current, timely claim.

In his objection to the application of the three-year statute of limitations, Cody attempts to cite this Court's previous decision in support of his continuing violation theory. Doc. 14 at 4. Although this Court did state that "if the mail policy is an unreasonable prison regulation, an ongoing implementation of that policy would constitute an ongoing violation of federal law," that statement was not made in reference to the continuing violations doctrine. Cody v. McDonald, 4:14-cv-04155-RAL, Doc. 65 at p. 10, 2016 WL 1060233, at *5 (D.S.D Mar. 14, 2016). Rather, it was in reference to whether Cody had stated a claim for prospective relief, which requires showing an ongoing violation of federal law. Id.

Because Cody's First Amendment claims do not fall under the continuing violations theory, only those instances of mail seizure which occurred within the three-year statute of limitations are actionable. However, he may use those instances outside of the statutory time frame to help support and provide background for his timely claims. Cody's objection to the Report and Recommendation's application of the three-year statute of limitations is therefore overruled.

### C. Actual Injuries from Seizure of Mail Claims

Cody's Amended Verified Complaint charges that Defendants' seizure of his mail from outside medical providers violates his due process rights, denies him access to the courts, and constitutes deliberate indifference to his medical needs. Judge Duffy recommended dismissal of

all these claims for failure to state a claim for which relief could be granted. Cody now appeals those recommendations.

### 1. Procedural Due Process

The protections of the Due Process Clause apply to prisoners in state institutions, but those rights may be diminished as a consequence of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). The requirements of due process often depend on the particular circumstances of the situation and account for the nature of the government function as well as the personal interest at stake. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Maintaining security in a prison setting is a significant government interest which may overcome certain First Amendment rights. Harris v. Bolin, 950 F.2d 547, 550 (8th Cir. 1991) (per curiam) (citing Thornburgh v. Abbott, 490 U.S. 401, 415-19 (1989)). However, "[a]n inmate's First Amendment interest in uncensored communication by letter requires 'that the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards.'" Knight v. Lombardi, 952 F.2d 177, 179 (8th Cir. 1991) (quoting Procunier v. Martinez, 416 U.S. 396, 417 (1974), overruled on other grounds by, Thornburgh, 490 U.S. at 413-14).

Cody primarily objects to the Report and Recommendation's reliance on Knight v. Lombardi, 952 F.2d 177 (8th Cir. 1991), to determine the validity of his claim. Cody points to factual distinctions between that case and the current one to argue that the analysis in Knight should not control. Doc. 14 at 5. However, the distinctions he attempts to make are either inaccurate or inconsequential to the ultimate analysis.

In Knight, the Eighth Circuit considered a prisoner's due process claim arising out of the seizure of his personal mail. Knight argued that the defendant prison officials never provided him notice of the seizure of his mail according to prison regulations and only confirmed the fact that

8

they had seized his mail nine days after he complained of the interference in writing to a prison official. Knight, 952 F.2d at 178-79. The Eighth Circuit noted that despite the defendants' neglect of the prison regulations, Knight nonetheless had actual notice of the seizures, and the prison had a grievance policy in place by which he could have protested the seizure. Id. at 179. The Eighth Circuit determined that Knight failed to allege any injury resulting from the seizure of his mail. Id. The Eighth Circuit concluded that because Knight had actual knowledge of the mail seizures, had an opportunity to contest them, and lacked an injury from the defendants' actions, he had no viable due process claim. Id.

Similar to Knight, Cody's Amended Complaint states no due process violation. Cody had actual knowledge that mail addressed to prisoners from outside medical providers is diverted to Health Services. Doc. 15 at 19. He also had the opportunity to and has filed grievances about the seizure of his mail. Doc. 9 at 8-9; Ex. 14a, 14b, 14c, 14d, 21a, 21b, 21c, 34a, 34b, 35a, 35b, 35c, 38, 48a, 48b, 49a, 49b, 49c, 50a, 50b, 52a, 52b, 66b, 66c. Cody does not plead a concrete injury that he sustained from the seizure of his mail. Although he references his family medical history and past documentation mistakes to suggest possible misdiagnosis in the future, such a hypothetical injury is not certain to occur and does not amount to an actual injury sufficient to sustain a due process claim. Doc. 14 at 5. Cody argues that the likelihood he may sustain an injury is sufficient to support his claim, citing Supreme Court and Eighth Circuit caselaw. Doc. 14 at 5-6. However, those cases only permit plaintiffs to seek injunctive relief when defendants "disregard[] an objectively intolerable risk of harm." Farmer v. Brennan, 511 U.S. 825, 846 (1994). Due to his family history of leukemia, Cody's risk of contracting the disease may be higher than the average person, but diverting his mail from outside medical providers to Health Services until he requests a copy does not create an objectively intolerable risk of imminent harm. Because

Cody has notice of the seizure of his medical mail, has an opportunity to challenge that seizure, has an opportunity to obtain that mail on request, and has neither suffered nor is about to suffer an actual injury, his objections to the Report and Recommendation as they relate to his due process claims are overruled.

**2. Seizure of Mail and Access to the Courts Claims**

To successfully plead a claim alleging a deprivation of a prisoner's access to the courts, a prisoner must establish that he or she suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 351–52 (1996). In access to the courts cases, a prisoner must prove an actual injury by showing "'that a nonfrivoulous [sic] legal claim had been frustrated or was being impeded.'" White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (quoting Lewis, 518 U.S. at 353). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Cody argues that he sufficiently articulated four actual injuries for which he could have sought judicial relief had Defendants not seized his mail from outside medical providers. Doc. 14 at 6. He claims that if he had access to these medical reports he would have prepared and pursued litigation for (1) denial of medical care for his longstanding left shoulder pain and nasal problems; (2) his inability to confirm that his medical information and medication list is accurately given to outside medical providers; (3) not receiving the treatment and medications recommended by outside medical providers; and (4) his right to receive mail addressed to him without another tenable alternative. Doc. 14 at 6. Each of these arguments is frivolous because they lack an arguable basis either in law or fact.

Cody's proposed legal claims (1) and (3) are not actionable because a prisoner's "mere disagreement with treatment decisions does not rise to the level of a constitutional violation."

Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). According to his Declaration, Cody has had shoulder pain and nasal problems for decades. Doc. 15 at 2. As a result, his physicians have provided or suggested a variety of treatments and accommodations for both maladies. Doc. 15 at ¶¶ 6, 7, 14, 19, 29, 31, 41, 42, 44, 189, 213, 216, 217, 244, 248, 249; Ex. 40. Some recommendations for treatment options had been denied as not medically necessary or in favor of alternative treatments. Doc. 15 at ¶¶ 33, 40, 44. Just because Cody's ailments were not cured, and just because he did not always receive desired treatments, does not mean he could have sustained his proposed claims (1) and (3). Rather, these claims would fail to state a legal claim.

Cody's proposed legal claim (2) would fail to state a claim as well. Upon learning that one of his physicians had received incorrect information about the medications he was taking, Cody notified Correctional Health Services of the error through the appropriate grievance procedure. Doc. 15 at ¶ 111; Ex. 31a, 31c. Department of Corrections officials responded to the request and informed Cody that an updated version of the medication list was provided to that physician's office within a month of the original complaint. Doc. 15 at ¶ 114; Ex. 31d, 33. Cody alleges no harm that resulted from the doctor having an incorrect medication list for less than one month. Therefore, this claim would have been dismissed and cannot support an access to courts claim.

Cody's fourth proposed legal claim would also fail as a matter of fact. Cody has in fact accessed the courts regarding the seizure of his mail from outside medical providers. Without the prison officials seizing Cody's mail, this claim would not exist at all. Therefore, he may be able to show that they created a cause of action, but he cannot show that this claim was frustrated or impeded by the Defendants. Because Cody cannot establish any nonfrivolous legal claims that

were impeded by Defendants' seizure of his medical mail, his objection to the recommended dismissal of his access to the courts assertions in Claims 1 and 2 is overruled.

### 3. Eighth Amendment Subclaims of Claims 1 and 2

The Eighth Amendment protects those convicted of crimes from cruel and unusual punishment. Saylor v. Nebraska, 812 F.3d 637, 643 (8th Cir. 2016). To establish an Eighth Amendment violation regarding a prisoner's medical care, the plaintiff must show that a defendant acted with deliberate indifference to his or her serious medical needs. Id. "A prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety." Nelson v. Corr. Med. Servs., 583 F.3d 522, 528 (8th Cir. 2009) (citation omitted). To successfully state a deliberate indifference claim, "[t]he plaintiff must prove 'that he suffered from an objectively serious medical need' and 'that [defendants] actually knew of but deliberately disregarded his serious medical need.'" Saylor, 812 F.3d at 644 (alteration in original).

Cody challenges Judge Duffy's Report and Recommendation for dismissal of his Eighth Amendment subclaims of Claims 1 and 2 on two grounds. First, he alleges that Defendants were deliberately indifferent when he informed them that an inaccurate medications list had been provided to a physician, and second that they were deliberately indifferent to his longstanding shoulder pain and nasal condition.

With regard to the medications list, Cody did not plead sufficient facts that Defendants were deliberately indifferent to his serious medical needs. As discussed above, once Cody notified Correctional Health Services that an incorrect and outdated list of medications had been provided to a physician, the Defendants took steps to remedy the error by sending the doctor's nurse an updated and accurate list of the medications Cody was taking. Doc. 15 at ¶¶ 111, 114; Ex. 31a,

31c, 31d, 33. Cody alleges no facts that suggest Defendants knew the medications list was inaccurate when initially supplied to the doctor, and once they did know of the error, they took prompt and appropriate action to correct it. Thus, the contention of supplying initially an outdated medications list does not support a deliberate indifference claim.

Cody's second example seems inapposite to the claims by which he brings it. Claims 1 and 2 of Cody's Amended Verified Complaint address the seizure of Cody's mail from outside medical providers. Doc. 9 at 62-64. However, in his objections Cody argues that Defendants acted with deliberate indifference by failing to treat his longstanding shoulder pain and nasal problems. Doc. 14 at 7. He does not plead any facts which suggest that the Defendant's denial of his medical mail from outside providers contributed to these issues or caused him greater harm. Because Cody cannot establish that Defendants acted with deliberate indifference by seizing his mail sent from outside medical providers, his objections to Judge Duffy's treatment of his Eighth Amendment subclaims of Claims 1 and 2 are overruled.

**D. Dismissal of Defendants**

In Judge Duffy's Report and Recommendation, she recommended that three Defendants be dismissed from the action based on their lack of liability in their supervisory positions. Doc. 12 at 33-35. Cody objects to this finding, and argues that those three Defendants, Correctional Health Services Regional Medical Director Dr. Mary Carpenter (Carpenter), Warden Darin Young (Young), and Secretary of South Dakota Department of Corrections Dennis Kaemingk (Kaemingk), are liable in their supervisory roles.

"To prove a supervisory liability claim, the plaintiff must demonstrate that prisoners face a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive

13

[practices].'" Williams v. Willits, 853 F.2d 586, 588 (8th Cir. 1988) (alteration in original) (quoting Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)). To show that a supervisor acted with deliberate indifference, the plaintiff must show that a defendant acted with "more than mere negligence," yet "less than acts or omissions for the very purpose of causing harm." Farmer, 511 U.S. at 835. A defendant's "failure to process or investigate grievances, without more, is not actionable under § 1983." Thomas v. Banks, 584 F. App'x. 291, 291 (8th Cir. 2014) (per curiam); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam).

**1. Dr. Mary Carpenter**

Cody argues that as the Correctional Health Services Regional Director Carpenter had notice of the seizure of his mail from outside medical providers, was responsible for promulgating rules he believes are unconstitutional, denied his request for a hearing aid, and failed to take action regarding his complaints about a registered nurse whom Carpenter supervised.

Cody's complaint and declaration do not establish sufficient facts to show that Carpenter was deliberately indifferent to most of the alleged violations Cody set forth. Cody did inform Carpenter that his medical mail was being diverted to Health Services and asked her to change the policy. Doc. 15 at ¶ 94; Ex. 24. The notice alone however is not sufficient to establish that she was deliberately indifferent in her supervisory role. When dealing with issues of prison security, courts may "defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." Florence v. Bd. Of Chosen Freeholders of Cty. Of Burlington, 566 U.S. 318, 322-23 (2012). The mail diversion policy is arguably constitutional, as it may be rationally related to a legitimate penal interest. Therefore, her decision to promulgate and retain the policy was not done with reckless disregard or deliberate indifference to Cody's constitutional rights.

Similarly, Cody cannot establish that Carpenter was deliberately indifferent to his claims alleging retaliation by a registered nurse. Cody's complaints about the registered nurse were conclusory allegations and provided no means for her to pursue an investigation. Doc. 15 at ¶ 142; Ex. 43. Additionally, the one specific allegation that Cody did put forth was addressed by the grievance procedure, and what he considered retaliation was really "common practice." Ex. 46b. Therefore, Carpenter was not deliberately indifferent to Cody's retaliation claims.

Judge Duffy's Report and Recommendation discounted Cody's claim against Carpenter for denying him a hearing aid because Judge Duffy believed that Carpenter merely allowed others to deny Cody's request. However, upon a de novo review of the record, Cody has pleaded sufficient facts that Carpenter was personally involved in denying Cody's request for hearing aids. Doc. 9 at ¶ 104 ("Following denials of hearing tests by Dr. Mary Carpenter, MD, Cody continued to complain about his inability to hear…"); Doc. 9 at ¶ 107 ("Dr. Carpenter again denied Cody the hearing aids recommended by Dr. Koch on or about May 10, 2016."); Doc. 9 at ¶ 111; Doc. 15 at ¶ 136; Ex. 40. Because Cody has alleged deliberate indifference to serious medical needs against Carpenter herself, she should not be dismissed from the hearing aids subclaim. If her role was merely supervisory in allowing others to deny Cody hearing aids, then she may be entitled to summary judgment. As Judge Duffy found, Cody pled sufficient facts to allege that certain other Defendants acted with deliberate indifference to his hearing needs in the prison environment.

**2. Warden Darin Young**

Cody challenges the Report and Recommendation's finding that Young lacks supervisor liability. He argues that Young's notice of the mail seizure policy, and his lack of action regarding alleged staff misconduct rise to the level of deliberate indifference. Young lacks supervisor

15

liability related to the mail seizure policy for the same reasons Carpenter is not liable, as discussed above.

Similarly, Cody's claim that Young was deliberately indifferent to his complaints of retaliation fails because "failure to process or investigate grievances, without more, is not actionable under § 1983." Thomas, 584 F. App'x. at 291. Cody argues that two prison employees under Young's supervision subjected him to retaliation, one a unit manager, and the second a correctional officer. With regard to the first argument, the facts as pled establish that although Young did not directly reply to Cody's grievance about a Unit Manager, his Amended Verified Complaint and the exhibits he attached to his Declaration show that the issue was addressed by the grievance process. Doc. 9 at ¶ 177; Doc. 15 at 172; Ex. 62d. Cody nonetheless complains that Young's failure to respond to his complaints directly subjects him to supervisor liability. Doc. 15 at 10; Ex. 62c. However, a supervisor is not liable simply because he neglects to directly respond to every complaint which he fairly believes has been handled by another system.

Cody also cannot show that Young was deliberately indifferent to his retaliation claims against a correctional officer. According to Cody, after complaining of an alleged seizure of documents prepared for litigation, Cody spoke directly with Young about the issue. Doc. 15 at ¶ 224. Subsequent correspondence through the grievance process reveal that Young investigated Cody's claim, but he found no evidence of the stolen property and the correctional officer denied taking the legal documents. Doc. 15 at ¶¶ 234-35; Ex. 82b, 82d. Young took steps to conduct an investigation into Cody's claim of deprivation of his rights. Just because Young's investigation did not yield the results Cody wished for does not mean Young was deliberately indifferent to the possible deprivation. As the Report and Recommendation suggested, Cody may go forth with this

claim against the correctional officer, but not against Young simply because he supervised the alleged offender.

### 3. Former Department of Corrections Secretary Dennis Kaemingk

In his objection to the Report and Recommendation's dismissal of former Secretary for the Department of Corrections Dennis Kaemingk, Cody argues that Kaemingk is liable in his supervisory role because he had notice of the mail seizure, he promulgated a rule Cody believed to be unconstitutional, and he had notice of retaliation claims against a registered nurse. Doc. 14 at 11.

Cody fails to allege sufficient facts to impose supervisory liability upon Kaemingk or his successor. For the reasons discussed as they pertained to Carpenter, Kaemingk is not liable in his supervisory role relating to the seizure of Cody's mail from outside medical providers, his promulgation of rules Cody believed to be unconstitutional, or his knowledge of retaliatory claims against the registered nurse.

## III. CONCLUSION

For good cause, it is hereby

ORDERED that Plaintiff's Objections to Report and Recommendation, Doc. 14, are overruled except with regard to the dismissal of Dr. Mary Carpenter on Claim 3. It is further

ORDERED that the Report and Recommendation in all other respects, Doc. 12, is adopted.

DATED this 17th day of September, 2019.

BY THE COURT:

*Roberto A. Lange*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE